# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | |
|---|---|
| **DWIGHT S. PRINCE** | **CIVIL ACTION NO. 2:18-CV-1076** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **COCA-COLA BOTTLING COMPANY UNITED, INC.** | **MAGISTRATE JUDGE KATHLEEN KAY** |

## RULING

Plaintiff Dwight S. Prince ("Prince") brought this employment discrimination lawsuit against Coca-Cola Bottling Company United, Inc. ("United"). Prince alleges that United retaliated against him for making claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, as amended ("Title VII"); discriminated against him on the basis of an alleged disability, i.e., anxiety and social phobia, in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*. ("ADA"); and discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq*. ("ADEA"). Prince also makes a claim of invasion of privacy under Louisiana law.

Pending before the Court is United's Motion for Summary Judgment on Prince's retaliation, age discrimination, disability discrimination, and invasion of privacy claims. [Doc. No. 24]. United moves for dismissal of all Prince's claims.

On January 23, 2020, Prince filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 26].

On January 28, 2020, Union filed a Reply Memorandum in support of its Motion for Summary Judgment [Doc. No. 32].

For the following reasons, United's Motion for Summary Judgment is GRANTED, and Prince's claims are DISMISSED WITH PREJUDICE.

## I.    FACTS

United is a bottler of Coca-Cola products with operations throughout the Southeastern United States, and it is headquartered in Birmingham, Alabama. Prince became employed with United in its Lake Charles facility on May 27, 1995, and his position in the last years of employment was as a bulk merchandiser. [Doc. No. 24-6]. Merchandiser positions are in the collective bargaining unit, so Prince was subject to the rules of the collective bargaining agreement and the employee handbook. [Doc. No. 24-5, Prince Depo., pp. 26-27]. Prince acknowledged that he had to abide by the rules in the handbook, but considered them "bullshit." *Id*. at pp. 27, 30.

In 2012, Prince was selected for a random drug screen, which came back positive for prescription drugs, but he had a prescription, so he passed. [Doc. No. 24-6, Declaration of Jennifer Gullo ("Gullo Dec."), ¶ 5]. He received no adverse action because of the test. *Id*. Prince acknowledges that he had several random drug screens during his employment, and other employees were subjected to them as well. [Doc. No. 24-5]. However, Prince felt that the 2012 drug screen was not random because he had complained about another employee sleeping on the job. *Id*.

After the 2012 drug screen, Prince began to regularly question United management as to why he was selected for the random drug screen. [Doc. No. 24-6, Gullo Depo., ¶¶ 7-9]. In September 2012, Prince contacted Jennifer Gullo ("Gullo"), then-West Region Human Resources Director,[1] about the drug test. *Id*. at ¶ 7.  He advised Gullo that he was getting strange

---

[1]Gullo is now Talent Acquisition Director for United.  [Doc. No. 24-6, Gullo Dec., ¶ 2].

looks from employees and others in the marketplace. *Id*. Prince also complained that his medical information had been disclosed to others, including Human Resources. Gullo agreed to investigate the matter. Gullo obtained information from the third-party company that administers the random testing program and confirmed the selection was, in fact, random. She also interviewed Human Resources personnel in Lake Charles to see if anyone had obtained any information about Prince's medical situation from the drug testing company or the medical review officer. Based on her investigation, Gullo found no information corroborating Prince's claims. *Id*. She spoke with Prince and provided him the documents showing that the drug screen was, in fact, random. [Doc. No. 24-5]. Prince disagreed. Gullo also told him that no one from Human Resources obtained or disclosed any medical information as a result of the drug test. [Doc. No. 24-6, Gullo Depo., ¶ 7].

Prince continued to complain to Human Resources about the drug test and alleged disclosure of medical information. Gullo spoke with Prince on several occasions and advised him that there was no information to support his beliefs. Prince also called Debbie Myles ("Myles"), Vice President of Human Resources, and Claude Nielsen, Chief Executive Officer, both of whom are based in Birmingham, to register complaints. He also met with Paul Favaron, Division Vice President; Gullo; and the Union steward to discuss his complaints. During this meeting, a representative from the drug testing company was present via conference call to explain the random process and answer any of Prince's questions. *Id*. at ¶ 10.

In May of 2014, Prince confronted Eric Couvillion ("Couvillion"), a co-worker, complaining that Couvillion's girlfriend had disclosed his medical information, and told Couvillion that it would be in the girlfriend's best interest "to keep her fucking mouth shut." *Id*. at ¶ 11. Couvillion was troubled by this exchange and no longer felt comfortable around Prince.

Statements were taken, but there was no corroboration of Prince's claims that people were talking about him behind his back. As a result of this incident, Prince was given a warning on June 5, 2014, and he was told that there was no information supporting his claims. He was told at this meeting that continued accusatory, erratic behavior would lead to discipline. Due to concern over Prince's actions, Gullo contacted United's employee assistance program ("EAP") to discuss Prince's behavior. United management agreed that Prince would undergo a mandatory referral to the EAP. Prince attended the EAP sessions and had favorable evaluations. He continued working while in the EAP sessions. *Id*.

On September 14, 2016, Prince filed a charge with the Equal Employment Opportunity Commission ("EEOC"), wherein he alleged race discrimination and retaliation: "[o]n June 1, 2016, Claude Nielsen, Chairman of Board of Directors, stole my audio recorder and I believe he told the company employees that I was recording them, creating a hostile work environment. I was recording company employees because of the previous retaliation I've experienced from the company…" [Doc. No. 24-6, Exh. 7].

Prior to filing the EEOC charge, Prince had not made any complaints of this nature to United. [Doc. No. 24-6, Gullo Dec., ¶ 14]. Prince then made the same claim to Pamela Harrington ("Harrington"), Employee Relations Manager; Harrington reported it to Gullo. Gullo called Prince and asked him about it. Prince told her that Nielsen had taken his recorder. Gullo spoke with Myles, who, in turn, spoke with Nielsen, about the allegedly stolen recorder. Gullo was told that there was no truth to the allegations. Prince believed that Nielsen told people that Prince was recording him, and he asserted from this point until his termination that he was harassed as a result. Prince even reported his stolen recorder to police, whom he believed were "full of junk." [Doc. No. 24-5, Prince Depo., pp. 104-105].

On June 12, 2017, Prince filed another EEOC charge alleging race discrimination and retaliation. He alleged: "[o]n April 15, 2017, Claude Nielsen, Chairman of Board of Directors, and Pamela Harrington, Human Resource Representative, are the ones responsible for releasing information stating that I had said that Ken Francois (sic) issued a death threat. It basically makes me a person no one wants to be associated with. They are upset that I filed a previous charge and they want me to quit." [Doc. No. 24-6, Exh. 11].

On or about October 11, 2017, Derek Bellard ("Bellard") (Prince's immediate supervisor), Harrington, and Prince met to discuss Prince's performance. [Doc. No. 24-6, Exh. 8]. Bellard spoke to Prince about some issues with merchandising and rotation of company product, and he told Prince that he was not meeting his workload expectations. Prince responded to the issues by saying, "[f]ind a merchandiser that can work a store correctly under the same circumstances that I have to work under, and if you don't like what I'm doing then fire me, and I will see you in court." *Id*. at p. 18. Prince walked out of the meeting, and Harrington followed him to inquire about the comment he made to Bellard. Prince stated that United was releasing his personal information to others, but United was trying to cover it up. He also said, "other employees would resort to violence but because I am a strong person physically and mentally I don't." *Id*. He went on to say that other vendors were making comments to him because United told these vendors that Prince had been recording them. Prince refused to give specifics about these comments, but he advised that he wanted to speak to Susanne Hall, the West Region Vice President. Prince also asked Harrington if the company was in possession of his personal belongings, i.e., his tape recorder. Harrington advised Prince that she was not aware that the company had any of his personal belongings.

On December 1, 2017, Prince sent an email to The Coca-Cola Company in Atlanta, Georgia. There is no ownership or corporate relationship between United and The Coca-Cola Company. In the email, Prince stated:

> I have worked for coco cola for twenty two years but the last five years I have been harassed and threaten. Coca cola united has released medical information about me to company employees such as miller lite, pepsi employees. Coca cola has stolen an auto recorder which was being used to record the harassment. there are many other incident of racial harassment. I have spoken to claude nelsen chairman of the board of directors about this but the harassment has continued. I would like an investigation from coca cola usa.

*Id*.

Hall and others met with Prince in Lake Charles on December 20, 2017. In attendance were Prince, Gullo, Hall, John Miller (Division Director), Joseph Lenini (Security Manager), and Doug Smith (Union Representative). [Doc. No. 24-6, Gullo Dec., ¶ 15]. Hall asked Prince to explain the reason for requesting the meeting. He stated that five years before, he was inappropriately asked to take a drug test. Prince said that he had been targeted and harassed. Prince was asked specific questions about the targeting and harassment but refused to disclose any information regarding witnesses, dates, or details of the alleged incidents. Prince also asserted at this meeting that he wanted United personnel as well as personnel from the drug testing company to take a polygraph examination in order to prove his allegations. He was told that United does not engage in polygraph testing of its employees. Prince insisted that an independent investigator should be called in to investigate his allegations and for the witnesses to be polygraphed. Prince also advised that he had contacted the authorities to request a criminal investigation into the theft of his tape recorder. Throughout this meeting, Prince presented no new information or allegations or provided any information regarding inappropriate or unlawful behavior that could be investigated. Prince also brought up the fact that he was referred to the EAP, to which Gullo responded that the company had been and was concerned about him. *Id*.

Prince was told that he continuously refused to accept any answers previously provided him, and he could not accept that no one had been sharing his personal medical information. He was further advised that the company did not access his medical information. Prince was told that these ongoing suspicions and unfounded complaints were detracting from the company's business, and there was no need to discuss these matters any further. Hall asked Prince if he was clear about her message and direction, to which he replied that he was. He then asked about the possibility of taking a sabbatical. He was told that he would be free to do so if that were what he wanted. Gullo walked Prince out of the meeting and told him that he was still eligible for free sessions with the EAP if he so chose. *Id*.

Between the months of December 2017 to January 2018, Prince sent a number of accusatory emails to The Coca-Cola Company. One of the emails discussed the specifics of the meeting Prince had with United personnel on December 20, 2017.[2] The emails also included accusations of harassment and theft on United's part.[3] The final email enclosed more accusations

---

[2] I endured a meeting with these clowns, and there was a discussion about extortion. coca-cola company should be interested in what was said. I now know Coca-Cola company is siding with theses racist criminals in the hr department of coca-cola united and that is disappointing. the coca-cola company will be forever changed, for you see I have become a soldier for civil rights. If I bow down to these racist criminals what will be said about me. The Coca-Cola company has sided with criminals, what will be said about you.

*Id.* at p. 20.

[3] There was a recorder stolen from me. Coca-Cola united is responsible for this crime. This recorder contains information related to the harassment. Lake charles police has been notified of this crime. If coke united sent this recorder to the Coca-Cola company, I want this recorder returned to me immediately.

*Id*. at p. 21

as well as threatening language.[4] For example, Prince stated, "let me say this I have had enough. If you keep pushing me I will push back. I Dwight Price have absorbed all of the bullets of harassment, I have not shot back once. I will no longer be a punching bag. There is something you people don't understand, if I receive no justice, well then I Will give no quarter, before my heart stops beating I will have vengeance and the world will know what you the coca-cola company has done." *Id*. at p. 22. Finally, Prince again demanded the return of his allegedly stolen tape recorder.[5] *Id*.

After reviewing these emails, Hall, Gullo, Miller, Lentini, and Myles conferred and decided to discharge Prince on the basis that his unfounded allegations of disclosure of medical information, theft of his tape recorder, and his continually raising these issues after being advised that the matter had been closed constituted insubordination. [Doc. No. 24-6]. Further, they also

---

[4] I had a meeting with violent criminals at united. These scumbags were trying to find out what I know about there criminal activity. the interesting thing is they lied when I asked them questions and refused to take a lie detector. there were some things I said during this meeting, which was repeated to another company. that is collusion between two separate companies. there was one incident where if I wasn't the man I am, there could have been a fight in a store. So do me a favor, don't give information to other companies about me, the legal responsibility is now on the Coca-Cola company and i mean the civil and the criminal responsibility. Thank you…coca-cola company is taking the side of racist criminals.

 *Id*. at p. 21.

[5] I have one thing my recorder needs to be returned no later than 1-15-18. United told me on 12-20-17 everything was sent to coca-cola company. if coca-cola company doesn't return my recorder I will pay a visit to the thief that gave this stolen recorder to the hr department of united. However, I can get him to make a confession but I fear when I confront this thief he may become violent. So to keep everyone safe return my recorder. Like I said the civil and the criminal responsibility is on the coca-cola company. I have had enough.

*Id*. at p. 22.

8

determined that he had engaged in threatening, false, offensive, malicious, and intimidating conduct, in violation of United's personal conduct policy. *Id.*

On April 26, 2018, Prince filed another EEOC charge, this time alleging retaliation, age discrimination, and disability discrimination. [Doc. No. 24-6, Exh. 12]. He alleged:

> On January 20, 2018[,] I was discharged by [Derek] Bellard would call me and tell me that I did not build a display correctly. In October 2017, I was brought into the office and told this was my last chance. On December 22, 2017, I requested that Suzanne Hall and John Miller take a lie detector test after my recorder went missing. I previously forwarded the email to the parent company re: harassment but Suzanne and John denied everything. On January 10, 2018, I was called into the office by John Miller and Doug Smith. Miller read some things and told me I was terminated for violation of company rules. I was replaced by a guy in his twenties. The company did not accommodate me re: my disability [sic] specifically they should have held more private meetings. . . I believe I have been discriminated against based on my age (42), my disability and retaliated against in violation of the [ADEA] and the [ADA].

*Id.*

On May 21, 2018, Prince filed a charge with the National Labor Relations Board, this time claiming he was terminated because he engaged in protected, concerted, union activities. [Doc. No. 24-6, Exh. 13].

On May 23, 2018, the EEOC issued a Notice of Right to Sue to Prince on Charge No. 461-2018-00864. He timely filed suit on August 20, 2018. Prince asserts that his termination constituted retaliation in violation of Title VII, age discrimination in violation of the ADEA, and disability discrimination in violation of the ADA. Prince further asserts that United's disclosure of his medical condition to non-medical personnel constituted an invasion of privacy in violation of the Louisiana Constitution, Art. I, § 5.

On December 30, 2018, United filed the instant Motion for Summary Judgment. The motion is fully briefed, and the Court is prepared to rule.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record, which highlight the absence of genuine issues of material fact. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012) (citing *Celotex Crop. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *ACE Am. Ins. Co*, 699 F.3d at 839.  The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255**.**

### B.  Title VII

United moves for summary judgment on Prince's Title VII claims.

Title VII prohibits both discrimination and retaliation. With regard to discrimination, the statute provides:

> It shall be unlawful employment practice for an employer—to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin.

42 U.S.C. §2000e (a)(1). With regard to retaliation, the statute provides:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. §2000e-3(a).

### 1. Discrimination

In its initial Motion for Summary Judgment, United did not move for summary judgment on a claim of race discrimination because, as it points out, no such claim was asserted in Prince's Complaint (nor did he raise a claim of discrimination on the basis of color, sex, national origin, or any other protected category under Title VII). Inexplicably, however, in his opposition memorandum, Prince asserts that he has raised a genuine issue of material fact for trial on his race claim under Title VII.

"A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990).

Even assuming *arguendo* that Prince's Complaint can somehow be read to include such a claim or that his opposition constitutes a motion to amend his Complaint to add such a claim, Prince cannot succeed. District Courts must dismiss Title VII claims when a plaintiff has not

exhausted his administrative remedies. *Fobbs v. Potter*, 338 Fed. App'x. 359 (5th Cir. 2009); *Garrett v. Judson Ind. School Dist.*, 299 Fed. App'x. 337 (5th Cir. 2008). In Title VII cases, exhaustion occurs when a plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. 42 U.S.C. §2000e-5(c). Generally, "[a] charge under [Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e–5(e)(1). However, in a deferral state,[6] such as Louisiana, the "time period is extended to 300 days." *See Conner v. Louisiana Dep't of Health & Hospitals*, 247 Fed. App'x. 480, 481 (5th Cir.2007). Title VII further provides that claimants have ninety days to file a civil action after their receipt of the right to sue. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citing *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982) (citing 42 U.S.C. § 2000e–5(f)(1) (1994)). The "requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Id.* (citing *Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir.1986); *Espinoza v. Missouri Pacific R.R. Co.*, 754 F.2d 1247, 1251 (5th Cir. 1985)).

In this case, Prince's April 26, 2018 EEOC charge is the only charge filed within 300 days after his termination, the employment action about which he complains. Prince claims that his termination was in violation of Title VII's retaliation provision "because he makes claims of discrimination." [Doc. No. 24-4 at p. 10]. Nowhere in that charge does he assert a claim of race discrimination. Therefore, he has failed to exhaust his administrative remedies, and any claim of race discrimination must be dismissed. Alternatively, if Prince sought to amend his Complaint to add such a claim, such a motion would be denied as futile in light of his failure to exhaust his

---

[6]"A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 n. 1 (5th Cir. 1988). The Louisiana Commission on Human Rights is such an agency.

administrative remedies.  Finally, to the extent that Prince filed two earlier EEOC charges in which he asserted claims of race discrimination, those charges did not address his termination, the employment action about which he now complains.  Further, he has offered no evidence that he filed suit within ninety (90) days of the date he received notices of right to sue on the earlier charges.  Therefore, United's Motion for Summary Judgment is GRANTED as to any race discrimination claim under Title VII.

### 2.  Retaliation

United also moves for summary judgment on Prince's Title VII retaliation claim, contending that he failed to exhaust his administrative remedies.  Alternatively, United argues that Prince failed to make out a prima facie case of retaliation and that, even if he could, United has offered legitimate, non-retaliatory reasons for his termination.

 While Prince filed three EEOC charges, only the last was filed after the termination about which he complains.  Thus, to the extent he contends that such termination was retaliation under Title VII, he must have exhausted his administrative remedies with regard to that claim. Defendant asserts that any retaliation claims under Title VII must be dismissed because Prince's April 26, 2018 EEOC charge makes no reference to Title VII or any retaliation claims under it; therefore, Prince would not have exhausted the administrative remedies necessary for a Title VII claim. Rather, Prince claims he was retaliated against in violation of ADEA and the ADA.

The Court agrees.  A fair reading of his Charge shows that a claim of Title VII retaliation cannot have reasonably been expected "to grow out of the charge of discrimination."  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *see also Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 450–51 (5th Cir. 1983) (Reading *Sanchez* and *Gamble v. Birmingham So. R.R. Co.*, 514 F.2d 678 (5th Cir. 1975), to hold "that a cause of action for Title

VII employment discrimination [or retaliation] may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."). Prince never mentions Title VII or any facts to support a claim that he was retaliated against for engaging in Title VII-protected activity. On this basis alone, United is entitled to summary judgment on his Title VII retaliation claim.

Alternatively, even if his earlier EEOC charges can somehow be read with his last, timely charge, he has failed to raise a genuine issue of material fact for trial on his Title VII retaliation claim. In this case, Prince has presented no direct evidence that retaliation motivated Defendant's decision to terminate him. To the extent that he relies on circumstantial evidence of retaliation, he must first establish a *prima facie* by showing that: (1) he participated in an activity protected under the statute; (2) the employer took an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Feist v. La. Dept. of* Justice, 739 F.3d 450, 454 (5th Cir. 2013).

It is clear that Prince previously filed two EEOC charges, at least ostensibly raising race discrimination. Even if his activity was protected, however, Prince also had to show a causal connection between his EEOC charges and his termination.

A plaintiff may sometime rely on timing to establish the causal connection for a prima facie case. In order to do so, the Supreme Court has recognized that there must be a "very close temporal proximity between knowledge of a protected activity and an adverse employment action," explaining that even a three-month period between protected activity and adverse action was too attenuated to support a retaliation claim. *Clark County School District v. Breeden*, 552

U.S. 268, 273 (2001).  The Fifth Circuit has held that a five-month lapse is not close enough to establish a retaliation claim. *Raggs v. Mississippi Power and Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002).

In this case, Prince filed his first EEOC charge claiming race discrimination and retaliation on September 14, 2016, approximately sixteen months before he was discharged. His second charge, also claiming race discrimination and retaliation, was filed on June 12, 2017, approximately seven months before his discharge.  Even if as Prince alleges, the 2017 EEOC Charge was not closed until four months before his termination, this temporal proximity alone is insufficient to establish the necessary causal connection.

Prince having failed to exhaust his administrative remedies with regard to this Title VII retaliation claim[7] and, alternatively, having failed to establish a *prima facie* case, United's Motion for Summary Judgment on Prince's Title VII retaliation claim is GRANTED, and this claim is also DISMISSED WITH PREJUDICE.

## C.  Age Discrimination

United also moves for summary judgment on Prince's claim that his termination was discrimination based on age in violation of the ADEA.

Under the ADEA, employers cannot "discharge any individual… because of such individual's age." 29 U.S.C. § 621.

29 U.S.C. § 621 addresses age discrimination in employment and states in pertinent part:

> The Congress hereby declares that—in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs; the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to

---

[7]United moves for summary judgment on Prince's retaliation claims under the ADA and ADEA as well. However, there are no such claims asserted in Prince's Complaint.  Therefore, the Court need not address these arguments.

the disadvantage of older persons; the incident of unemployment… is… high among older workers… It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C § 621.

In order to establish an ADEA claim, Prince must show that his age was the "but-for" cause for his employer terminating him; "proving that age was the 'motivating factor' for the decision is not enough." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 (2009); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010). A plaintiff may prove this with direct or indirect evidence. *Id*. Direct evidence proves the fact without inferences or presumption and often presents itself in the form of a discriminatory statement that directly coincides with the plaintiff's termination. *Id*. If the plaintiff cannot produce direct evidence, then he may rely on indirect evidence, which must be proven by the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 409 U.S. 792 (1972).

The burden-shifting framework, or the allocation of proof test, is applied as such. First, a plaintiff must establish a *prima facie* case of discrimination. To establish a *prima facie* case, a plaintiff must establish that he: (1) is a member of a protected class, (2) is qualified for the position in question, (3) suffered an adverse employment action, and (4) has been replaced by a person not a member of the protected class or otherwise treated differently on account of his class. *See Okoye v. Univ. or Texas Health Sciences Center*, 245 F.3d 507, 510 (5th Cir. 2001); *Myers v. Dallas Independent School District*, 2006 WL 3407828 (5th Cir. 2006). The employer may rebut the *prima facie* case by articulating a legitimate, non-discriminatory reason for its actions. *Id*. Thus, if a *prima facie* case is made, and the employer provides a legitimate

explanation, then the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not the true reasons but were a pretext for discrimination.

"On summary judgment [in the context of employment discrimination], the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Federal Express Corp.*, 283 F.3d 715, 719-20 (5th Cir. 2002). In other words, "it is not enough… to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves*, 530 U.S. 146 (quoting *St. Mary's Honor Center*, 509 U.S. at 519). To withstand summary judgment, "the plaintiff must produce substantial evidence of pretext." *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 402-03 (5th Cir. 2001); *see also Price*, 283 F.3d at 723-25.

In this case, United moves for summary judgment on the bases that Prince has failed to meet his burden of proof on an age discrimination claim because Prince has no direct evidence that he was terminated on the basis of his age, and he cannot establish a *prima facie* case in order to present indirect evidence. Specifically, as to the fourth prong of the *prima facie* case, United contends that Prince cannot establish that he was replaced by someone younger or that he was treated differently from similarly situated individuals under nearly identical circumstances.

United has presented undisputed evidence that Prince was replaced by Joseph Frazier, who was forty-three years old when he was hired on February 26, 2018. [Doc. No. 24-6, Gullo Dec., ¶24]. His date of birth is August 24, 1974, and Prince's date of birth is September 14, 1975, making Frazier more than a year older than Prince. *Id.*

Additionally, Prince failed to adduce any evidence that he was treated differently from someone younger in nearly identical circumstances. Prince instead dedicates his memorandum to disputing the veracity and integrity of United's investigation into his complaints. Such alleged

evidence fails to establish his *prima facie* burden.  When asked in his deposition if he was aware of any age discrimination, Prince responded, "I don't know. I don't know.  I have no idea." [Doc. No. 24-5 Prince Depo., p. 31].

Under these circumstances, Prince has failed to raise a genuine issue of material fact for trial, and United's Motion for Summary Judgment on his age discrimination claim is also GRANTED.

### D.  Disability Discrimination

United also moves for summary judgment on Prince's claim that he was unlawfully terminated in violation of the ADA.

Under the ADA, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to… discharge of employees." 42 U.S.C. § 12112.

42 U.S.C § 12102 defines disability as:

> …a physical or mental impairment that substantially limits one or more major life activities of such individual's record of such impairment; or being regarded as having such an impairment… an individual meets the requirements of being "regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102.

In his Complaint, Prince alleges that he was terminated "because of his disability."  [Doc. No. 1, ¶ 19].  However, in his Opposition, Prince clarifies that he believes United "perceived" or regarded him as disabled because "he had a medical condition that which was disclosed after his drug testing."  [Doc. No. 26, p. 2].

A plaintiff fails to exhaust his administrative remedies with respect to a regarded as claim if he makes no reference to such a claim in his EEOC charge. *See Silva v. Cherthoff*, 512 F.Supp.2d 792, 819-20 (W.D. Tex. 2007) (granting summary judgment when nothing in charge

indicated that employer misperceived nature of plaintiff's condition or ability to engage in major life activities); *Cadely v. New York City Dept of Transp.*, 2008 WL 465199, *10 (S.D.N.Y. 2008) (where nothing in the EEOC charge provided the agency with notice to investigate discrimination on the basis of the employer's inaccurate perception of the plaintiff's condition, the court lacked jurisdiction to hear the plaintiff's "regarded as" or "record of" claims); *Kear v. Bd. of Cnty. Comm'rs of Sedgwick Cnty., Kan.*, 491 F.Supp.2d 1052, 1055 (D. Kan. 2007) (holding that the plaintiff had not exhausted administrative remedies with respect to her "regarded as" claim where her EEOC charge stated only "I am disabled").

In this case, Prince's EEOC Charge alleges only that United "did not accommodate me re: my disability" because "they should have held more private meetings." [Doc. No. 24-6, Exh. 12]. Prince has produced no evidence that a claim that he was regarded as disabled was presented to the EEOC or arose out of the scope of its investigation, so that United was on actual notice of such a claim. Thus, Prince failed to exhaust his administrative remedies as to any claim that he was terminated because he was regarded as disabled.

Moreover, even if, given his multiple filings with the EEOC, United had actual notice of the claim that he was regarded as disabled, he has failed to make out a *prima facie* case. A plaintiff must demonstrate that: (1) he was actually or regarded as disabled; (2) he was qualified for the job; (3) an adverse employment action was taken against him; and (4) that he was replaced by or treated less favorably than non-disabled employees. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); EEOC v. LHC Grp., Inc., 773 F.3d 688, 697 (5th Cir. 2014); *see also McInnis v. Alamo Cnty, Coll. Dist.*, 207 F.3d 276, 279080 (5th Cir. 2000).

Other than unsubstantiated speculation, Prince has produced no evidence to connect his termination to a disability or regarded as disability. In Prince's opposition to the motion for summary judgment, he alleges discrimination "…for disability as the company apparently

perceived that he had a medical condition which was disclosed after his drug testing." [Doc. No. 26, p. 2]. However, this is the only mention Prince makes of any alleged disability discrimination in the entire memorandum. Prince has not produced any affidavits, pointed to deposition testimony, or provided any other proof establishing that he was disabled or regarded as disabled under the ADA. Prince has failed to produce any evidence establishing that his employer had any knowledge of a disability, aside from the fact that Prince failed a drug test because of prescribed medication that he was taking. Prince did state in his deposition that he had anxiety and/or social phobia, but he did not elaborate on how or whether United was aware of this alleged condition and regarded him as disabled as a result. Nor did he offer evidence to show that this condition constituted an actual disability for which he was terminated.

Prince has not met his burden of proof. He has not established a prima facie case tending to show that he was disabled or that his employer had knowledge of his disability. Prince has established no evidence that his termination had any causal link to his alleged disability. Prince never disclosed to Defendant that he suffered from anxiety or social phobia. There is no proof that any action by Prince would have allowed Defendant to establish the knowledge necessary for a claim such as this one. Without any knowledge of Prince's disability, Defendant could not have formed the necessary basis for any discharge decision under an ADA claim. Even if Prince could prove that Defendant had knowledge of the disability, Prince has no proof indicating any alleged disability motivated Defendant's decision to discharge him. Accordingly, United's Motion for Summary Judgment on Prince's disability discrimination claim under the ADA is also GRANTED.[8]

---

[8]Prince spends most of his time arguing that United's investigation was incorrect or incomplete, or that its decisions or findings were wrong. However, it is not the role of the Court to sit as a super-personnel agency to review United's employment decisions. It is the role of the Court to determine if Prince raised a genuine issue of material fact for trial as to whether United's termination of him was based on improper considerations.

### E.  Invasion of Privacy under Louisiana Constitution, Art. I, § 5

Finally, United moves for summary judgment on Prince's state law claim of invasion of privacy.

Under the Louisiana Constitution of 1974, Art. I, § 5, Louisiana law recognizes an individual's right to privacy. Violation of such is actionable in tort and is subject to a one-year prescriptive period. LA. CIV. CODE. ART. 3492; *Harvill v. Arnold*, 777 So.2d 1271 (La App. 2nd Cir. 2001). Louisiana Law recognizes four viable privacy interests: (1) unreasonable appropriation of an individual's name or likeness for a defendant's benefit; (2) a defendant's unreasonable intrusion upon a plaintiff's physical solitude or seclusion; (3) publicity which unreasonably places plaintiff in a false light before the public; and (4) unreasonable public disclosure of embarrassing private facts. *Juabert v. Crowley Post Signal*, 375 So.2d 1386, 1388 (La. 1979).

United moves for summary judgment on this claim because Prince's invasion of privacy claim is based on the knowledge the company allegedly gained in 2012 because of his random drug test.  Additionally, Prince testified that United found out about his medications during his treatment with EAP in 2014.  Viewing these events in the light most favorable to Prince, however, any potential invasion of privacy occurred more than a year before he filed suit on August 20, 2018.

Further, Prince has provided no evidence that this or any other private information was disclosed within one year of the filing of the lawsuit.  In fact, Prince cannot even establish that anyone at United disclosed any private information about his medical condition. Aside from inadmissible hearsay, Prince has provided no evidence identifying who at United received any of

his medical information from a physician in 2012 or who disclosed it. Prince also admitted that he has no information that United disclosed any information from the EAP to anyone.

Defendant's Motion for Summary Judgment on Prince's invasion of privacy claim is also GRANTED, and this claim is DISMISSED WITH PREJUDICE.

## III.    CONCLUSION

For the foregoing reasons, United's Motion for Summary Judgment is GRANTED, and Prince's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, the 18th day of March, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE